1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9                   EASTERN DISTRICT OF CALIFORNIA

10                          ----oo0oo----

11
MB SERVICE STATION, LLC, a
12 California limited liability          NO. CIV. 2:09-01868 WBS DAD
   company,
13
            Plaintiff,
14                                        MEMORANDUM AND ORDER RE:
        v.                                MOTION TO REMAND
15
CONOCOPHILLIPS COMPANY, a
16 Texas corporation, and DOES 1
   through 10, inclusive,
17
            Defendants.
18 _____/

19

20                          ----oo0oo----

21       Plaintiff MB Service Station, LLC brought this action

22 in state court against defendant ConocoPhillips Company alleging

23 violations of the California Franchise Act, Cal. Corp. Code §§

24 31101, 31201, and 31202, and California's Unfair Competition Law

25 ("UCL"), Cal. Bus. & Prof. Code §§ 17200-17210 and asking for

26 damages, declaratory relief, and injunctive relief.  Defendant

27 subsequently removed this action to this court.  Before the court

28 is plaintiff's motion to remand the action to state court.

1    I.    <u>Factual and Procedural Background</u>

2            Plaintiff operates a Union 76 gasoline station at 35550

3    Fremont Boulevard, in Fremont, California,[1] which is leased from

4    defendant.  (Notice of Removal, Ex. A ¶¶ 1, 10.)  Plaintiff was

5    in a franchise relationship with defendant and operated the

6    station as a franchisee pursuant to a "76 Dealer Station Lease

7    and Motor Fuel Supply Agreement" ("Franchise Agreement").  (<u>Id.</u> ¶

8    11.)  The most recent agreement became effective on May 1, 2008,

9    and is to expire on April 30, 2011.  (Singh Declaration ("Singh

10   Dec.") ¶ 4.)  In the agreement, plaintiff's rent was initially

11   set at $ 5,848 per month.  (<u>Id.</u> ¶ 5.)  As part of the agreement,

12   plaintiff also had to accept credit and debit cards at his

13   station and pay transaction fees and charges.  (Bonilla

14   Declaration ("Bonilla Dec.") Ex. B 5-6.)  From May 1, 2008, to

15   July 31, 2009, plaintiff allegedly paid $73,795 in credit and

16   debit card fees to defendant.  (Curtis Declaration ("Curtis

17   Dec.") ¶ 2, Ex. A.)  Plaintiff claims that such fees are

18   excessive, and that portions of these fees are being kept by

19   defendant as a "kickback" from credit and debit card companies.

20   (Reply 6:3-28, 7:1-17.)

21           On March 30, 2009, defendant sent a letter to plaintiff

22   indicating that the rent amount would increase by $1,049 a month

23   to $6,987, effective July 1, 2009.  (<u>Id.</u> ¶ 6, Ex. C.)  Defendant

24

25           [1]    The City of Fremont is in the Northern District of
     California.  Counsel's assertion at oral argument that there are
26   two cities in the State of California named Fremont falls on
     unsympathetic ears.  Whereas there is an unincorporated community
27   sometimes referred to as Fremont, also referred to as Elkhorn, in
     Yolo County, there is only one city by the name of Fremont in
28   California, and that is in Alameda County.  This action should
     have been filed there.

claims that this rent increase was part of its "Rent Policy," which plaintiff was subject to. (Eldredge Declaration ("Eldredge Dec.") Ex. A ¶ 11.) Under the Rent Policy rent at defendant's west coast gasoline stations was to increase gradually until 2013, to maximize defendant's rate of return on its property. (Id. at ¶¶ 10-11.) Under the plan the rent would be increased beginning July 1, 2009, to include maintenance and property taxes. (Id. at ¶ 11.) Starting on the anniversary of the previous dealer agreements in 2010, rent would be increased by a set increment each year, so that rent would ultimately reach nine percent of the appraised market value of the underlying property plus maintenance and property tax costs by 2013.[2] (Id.)

On May 15, 2009, plaintiff filed this action in Yolo County Superior Court. (Docket No. 1.) Plaintiff alleged that defendant's rent modifications and credit card service fee charges violated the California Franchise Act and UCL, and requested declaratory and injunctive relief, as well as damages and restitution. (Notice of Removal, Ex. A 7-9.) On July 7, 2009, defendant filed a notice of removal, based upon diversity jurisdiction pursuant to 28 U.S.C. § 1441(b). (Id. 2:19-21.) Defendant filed the instant motion to remand on August 8, 2009, arguing that its action falls below the amount in controversy

---

[2]     Defendant claims that pursuant to the Rent Policy, which is posted on its website, plaintiff's monthly rent would be as follows:
- January 1 to June 30, 2009: $5,848
- July 1, 2009 to April 30, 2010: $6,897
- May 1, 2010 to April 30, 2011: $8,345
- May 1, 2011 to April 30, 2012: $9,908
- May 1, 2012 to April 30, 2013: $11,652
- May 1, 2013 and thereafter: $13,766
(Bonia Dec. ¶ 2.)

1   requirement of $75,000, making subject matter jurisdiction on the

2   basis of diversity of citizenship improper.[3] (Docket No. 17.)

3   II. <u>Discussion</u>

4        "Under 28 U.S.C. § 1441, a defendant may remove an

5   action filed in state court to federal court if the federal court

6   would have original subject matter jurisdiction over the action."

7   <u>Moore-Thomas v. Alaska Airlines, Inc.</u>, 553 F.3d 1241, 1243 (9th

8   Cir. 2009).  A district court will have original jurisdiction

9   based on diversity when the amount in controversy is greater than

10   $75,000 and there is complete diversity between the

11   parties--i.e., the parties are "citizens of different states."

12   28 U.S.C. § 1332(a).  When a plaintiff moves to remand a case,

13   the defendant bears the burden of establishing that removal was

14   proper.  <u>Gaus v. Miles, Inc.</u>, 980 F.2d 564, 566 (9th Cir. 1992).

15   Any questions regarding the propriety of removal are resolved in

16   favor of the party moving for remand.  <u>Matheson v. Progressive</u>

17   <u>Speciality Ins. Co.</u>, 319 F.3d 1089, 1090 (9th Cir. 2003).  If

18   removal was improper, "the district court lack[s] subject matter

19   jurisdiction, and the action should [be] remanded to the state

20

---

21      [3]   Defendant urges that the court not rule on plaintiff's

22   motion because the Judicial Panel on Multidistrict Litigation
  ("MDL") granted defendant's request conditionally transferring

23   this case to the MDL on September 1, 2009.  (Docket No. 13.)
  Plaintiff has opposed the transfer, which is currently pending

24   before the MDL.  Given the opposition to the transfer, the court
  may rule on any pending motions before it.  In fact, Hon. Ronald

25   M. Whyte, who is assigned the MDL cases consolidated by
  defendant, recently ruled that he would wait to determine the

26   relationship between two of these MDL cases until their motions
  to remand were decided.  <u>See</u> <u>Singh v. ConocoPhillips Co.</u>, No.

27   MDL-0-0240 RMW, (N.D. Cal. Sept. 11, 2009).  Accordingly, the
  court finds it appropriate to rule on the motion, given that this

28   case should not be heard by the MDL if the action lacks federal
  subject matter jurisdiction.

court." <u>Toumajian v. Frailey</u>, 135 F.3d 648, 653 (9th Cir. 1998) (citing 28 U.S.C. § 1447(c)).

A.   <u>Amount in Controversy</u>

The parties concede that they are completely diverse-- the only question in this case is whether defendant has met the amount in controversy requirement.  Jurisdictional facts are assessed on the basis of plaintiff's complaint at the time of removal.  28 U.S.C. § 1441.  "In cases where a plaintiff's state court complaint does not specify a particular amount of damages, the removing defendant bears the burden of establishing, by a preponderance of the evidence, that the amount in controversy exceeds $[75,000]."  <u>Sanchez v. Monumental Life Ins. Co.</u>, 102 F.3d 398, 404 (9th Cir. 1996).  "The district court determines whether [a] defendant has met this burden by first considering whether it is 'facially apparent' from the complaint that the jurisdictional amount has been satisfied."  <u>Simmons v. PCR Tech.</u>, 209 F.Supp.2d 1029, 1031 (N.D. Cal. 2002)(citing <u>Singer v. State Farm Mut. Auto Ins. Co.</u>, 116 F.3d 373, 377 (9th Cir. 1997)).

In determining whether defendant has met this test, courts may consider "facts presented in the removal petition as well as any summary-judgment-type evidence relevant to the amount in controversy at the time of removal."  <u>Matheson v. Progressive Specialty Ins. Co.</u>, 319 F.3d 1089, 1090-1091 (9th Cir. 2003)(citing <u>Singer</u>, 116 F.3d at 377; <u>Gaus</u>, 980 F.2d at 567).  In the Ninth Circuit, the amount in controversy in suits other than class actions can be calculated from the defendant's viewpoint (the amount the defendant stands to lose) or the plaintiff's viewpoint (the amount the plaintiff stands to gain).  <u>Ridder</u>

1  Bros., Inc. v. Blethen, 142 F.2d 395, 399 (9th Cir. 1944)("The
2  value of the 'thing sought to be accomplished by the action' may
3  relate to either or any party to the action." (citation
4  omitted)); see also Kanter v. Warner-Lambert Co., 265 F.3d 853,
5  858 (9th Cir. 2001)(noting that Ridder Bros. remains good law
6  only in non-class action cases).

7       Plaintiff's complaint at the time of removal did not
8  specify an amount of damages, simply asserting "on information
9  and belief" that its damages are less than $75,000. (See Notice
10 of Removal, Ex. A 7-9.)  Instead, plaintiff prayed generally for
11 damages, an injunction restraining defendant "from implementing
12 CONOCO's Rent Modification at [p]laintiff's station, charging
13 fees for credit and debit card processing, assigning
14 [p]laintiff's Franchise Agreement and prohibiting CONOCO from
15 engaging in any retaliatory conduct," declaratory relief, and an
16 unknown amount in restitution.  (Id. at 7:24-28, 8:1-15.)
17 Therefore, the court must evaluate if defendant has proved by a
18 preponderance of the evidence that the case exceeds the amount in
19 controversy requirement.  Sanchez, 102 F.3d at 404.  Defendant
20 presents three arguments to support that the amount in
21 controversy requirement is met: (1) that the value of the Rent
22 Policy is over $75,000; (2) the value of the credit and debit
23 card fees exceeds $75,000; and (3) the cost of the injunction
24 prohibiting assignment of plaintiff's Franchise Agreement exceeds
25 $75,000.

26       1.   Value of the Rent Policy
27       Plaintiff and defendant differ in their method of
28 calculating the damages to plaintiff from the increases in the

6

rent policy.  Plaintiff contends that its damages should be calculated based on the amount of rent it will pay over its original rate of $5,848 a month, multiplied by the twenty-two months it will need to pay the increased amount until the expiration of the Franchise Agreement on April 30, 2011.  (Mot. Remand 5:18-26.)  This would make the maximum damages plaintiffs could claim from the rent increase $23,078.  (Id.)

Defendant argues that this calculation is faulty, and that the court should determine the value of the rent policy based on the difference between the monthly rent charges that would accrue under the Rent Policy and the original rate from July 1, 2009, to April 30, 2013, when the rent adjustments will fully be in effect.  (Opp'n 10:15-23.)  Defendant contends this is appropriate because plaintiff's requested injunction would prevent defendant from "implementing the Rent Policy in perpetuity," thereby causing harm to the defendant in excess of the damages claimed by plaintiff.  (Id. at 11:2-5.)  Defendant therefore values the harm of the injunction at approximately $159,000.  (Id.)

The correct answer lies between these two arguments. The court may evaluate the pecuniary loss to the defendant from an injunction to determine if the amount in controversy requirement is met.  See In re Ford Motor Co./ Citibank (South Dakota), N.A., 264 F.3d 953, 958 (9th Cir. 2001)("where the value of a plaintiff's potential recovery . . . is below the jurisdictional amount, but the potential cost to the defendant of complying with the injunction exceeds that amount, it is the latter that represents the amount in controversy for

7

jurisdictional purposes."); <u>Jackson v. American Bar Ass'n</u>, 538
F.2d 829, 831 (9th Cir. 1976).  In this case, the loss to the
defendant should be based on the length of the Franchise
Agreement.  Defendant could not possibly lose more from an
injunction restraining the rent increases than the length of the
Franchise Agreement with plaintiff.  When plaintiff's current
agreement expires in 2011 defendant can simply choose not to
renew the agreement with plaintiff, and enter into an agreement
with a franchisee willing to accept rent increases.  Plaintiff's
complaint lies not with the rent increases themselves, but rather
defendant's alleged failure to provide adequate notice for the
increases under California law, which defendant may cure during
the negotiation of the next Franchise Agreement.  (<u>See</u> Notice of
Removal Ex. A 4.)

         However, plaintiff's calculation of potential damages
fails to take into account that under the Rent Policy,
plaintiff's rent will increase again on May 1, 2010 by an
additional $1,448.  (Bonita Dec. ¶ 2.)  Taking into account
defendant's evidence of this increase, the total rent increase
plaintiff would face from the Rental Policy under the term of its
Franchise Agreement is actually $40,904.[4]  Therefore, the damages
to plaintiff and pecuniary losses to defendant from the Rent
Policy's rent increases are not alone sufficient to satisfy the
amount in controversy requirement.

---

[4]     This number was calculated by multiplying the rent
increase amount, $1,049 times ten months and adding it to the
difference between the original rent and the rent from May 1,
2010 to April 30, 2011 under the Rent Plan, $2,497, times twelve
months.  (($1,094 x 10) + ($2,497 x 12) = $40,904)

8

CRITICAL

2.   <u>Credit and Debit Card Fees</u>

Plaintiff seeks a "temporary restraining order, preliminary injunction, and permanent injunction restraining and enjoining CONOCO . . . from . . . charging fees for credit and debit card processing . . . ." (Notice of Removal, Ex. A ¶¶ 25, 35.)  Plaintiff also seeks damages and restitution of the amount plaintiff has paid for "above and beyond a reasonable service charge paid to the processor." (<u>Id.</u> at ¶ 20.)  Defendant claims that plaintiff's broad demand for an injunction to prevent it from charging credit and debit card fees would cause substantial economic losses.  To this end, defendant presents evidence that plaintiff's monthly average of credit and debit card processing fees based on the last fifteen months was $4,931.  (Curtis Dec. ¶ 2; Ex. A.)  An injunction preventing defendant from collecting credit card fees for the remaining twenty-one months of the Franchise Agreement would therefore result in losses of approximately $103,565.[5]  (<u>Id.</u>)  Additionally, defendant charged plaintiff approximately $73,795 in credit and debit card fees from May 1, 2008, to July 31, 2009, which plaintiff could be entitled to recover in restitutionary or consequential damages. (<u>Id.</u>)

Plaintiff argues that it is only seeking the amount

---

[5]   While defendant's original notice of removal did not quantify the losses it would incur as the result of plaintiff's requested relief related to credit and debit card fees and the assignment of the Franchise Agreement, the court may consider new evidence in opposition to a motion to remand and may deem the notice of removal amended by the new evidence.  <u>See</u> <u>Willingham v. Morgan</u>, 395 U.S. 402, 407 fn. 3 (1969); <u>Cohn v. Petsmart, Inc.</u>, 281 F.3d 837, 840 fn.1 (9th Cir. 2002).  Accordingly, the court will consider defendant's opposition to remand as an amendment to its notice of removal.

defendant "kept for itself or received from the credit and debit card processing institution as a 'kick back'" and that it does not ask for reimbursement of "pass-through fees" paid by defendant. (Reply 6:3-28, 7:1-17.) However, even if this were correct, it does not address the broad nature of the injunction requested against the defendant presented in the complaint at the time of removal. Defendant has presented uncontroverted evidence that an injunction preventing it from charging credit and debit card fees to plaintiff would result in approximately $103,565 in losses.

While plaintiff now seeks to minimize the scope of its injunction in its reply, "[p]laintiff cannot have it both ways . . . . By choosing to overplead in his complaint, plaintiff has chosen to accept the risk that he will plead himself into federal court." Simmons, 209 F. Supp. 2d at 1032. "The Supreme Court has long discouraged reliance on post-removal stipulations and affidavits," since such statements often attempt to manipulate the amount in controversy to secure jurisdiction in a particular court. Id. at 1033 (citing St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 292 (1938). Given the broad nature of the injunction sought in the complaint relating to credit and debit card fees, it is clear that defendant would stand to lose much more than $75,000 were the injunction issued. Defendant has met its burden to prove the amount in controversy requirement is met by a preponderance of the evidence.[6] Accordingly, the court will

_____

[6] Since this action has met the amount in controversy requirement due to costs of the credit and debit card fees injunction to defendant and plaintiff's potential rent increase

1  deny plaintiff's request for an award of costs and attorney's

2  fees, as removal was proper.

3          B.   Rule 11 Sanctions

4              Defendant mentions in its opposition to the motion that

5  the court should issue sanctions against plaintiff under Rule 11

6  of the Federal Rules of Civil Procedure.  (Opp'n. 18-19.)

7  However, this request is procedurally deficient, and will not be

8  considered.  Rule 11 plainly requires that "[a] motion for

9  sanctions must be made separately from any other motion . . . ."

10 Fed. R. Civ. P. 11(c)(2).  In simply adding a section to their

11 opposition to plaintiff's motion for remand defendant has failed

12 to meet the precise requirements for a Rule 11 motion for

13 sanctions.  See Arellano v. Home Depot U.S.A., Inc., 245 F. Supp.

14 2d 1102, 1109 (S.D. Cal. 2003)(declaring Home Depot's request for

15 sanctions "procedurally defective" because it "was contained in

16 its opposition to plaintiff's motion to remand").

17              IT IS THEREFORE ORDERED that plaintiff's motion to

18 remand be, and the same hereby is, DENIED.

19              IT IS FURTHER ORDERED that plaintiff's motion for

20 attorney's fees and costs be, and the same hereby is, DENIED.

21 DATED:  October 28, 2009

22

23 _____

24 WILLIAM B. SHUBB

   UNITED STATES DISTRICT JUDGE

25

26

27

28 damages, the court finds it unnecessary to evaluate the costs of
   the injunction to prevent assignment of the Franchise Agreement.

11